UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL SCOTT LOVETT,

      Plaintiff,

v.                                    Case No. 1:18-cv-618
                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for child's disability benefits (CDB), disability insurance benefits (DIB), and supplemental security income (SSI).

## I.      Background

Plaintiff was born in 1982. As the administrative law judge (ALJ) observed, plaintiff applied for three types of benefits as an adult:

> On October 27, 2014, the claimant filed an application for child's insurance benefits based on disability and a Title II application for a period of disability and disability insurance benefits. The claimant also protectively filed an application for supplemental security income on October 27, 2014. In all the applications, the claimant alleged disability beginning February 2, 1982. These claims were denied initially on April 3, 2015. Thereafter, the claimant filed a written request for hearing on April 16, 2015 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on February 9, 2017, in Mt. Pleasant, Michigan.

PageID.40.

Plaintiff identified his disabling conditions as: arthritis in neck and back; pinched nerve in neck; severe anxiety; sleep apnea; asthma; chronic bronchitis; acid reflux; learning disability; right hand pain; and skin condition (eczema and psoriasis). PageID.330. Prior to applying for benefits, plaintiff completed the 9th grade and had past employment as a grounds man for a tree service. PageID.332. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 25, 2017. PageID.40-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## II.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

Finally, "[a]s required by section 202(d) of the Social Security Act, to be entitled to child's insurance benefits [sometimes referred to as "CDB"], the claimant must have a disability that began before attainment of age 22." PageID.40.

### III. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not attained the age of 22 as of the alleged disability onset date of February 2, 1982, that plaintiff has not engaged in substantial gainful activity since the alleged onset date, and that plaintiff last met the insured status of the Social Security Act on June 30, 2005. PageID.42. In reaching this determination, the ALJ found that while plaintiff worked after the alleged disability onset date, his income never exceeded the annual threshold limit to be considered substantial gainful activity. PageID.42-43.

At the second step, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease; asthma; hypertension; obesity; anxiety disorder; obsessive-compulsive disorder; and intellectual disability. PageID.43. At the third step, the ALJ found that prior to attaining age 22, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry ten pounds frequently and 20 pounds occasionally. He can stand and/or walk six hours and sit six hours during an eight-hour workday. He can frequently climb ramps and stairs. The claimant can frequently stoop, kneel, crouch, and crawl. He can never climb

ladders, ropes, or scaffolds. He can tolerate occasional exposure to atmospheric conditions but never in excessive amounts. He is able to understand, remember, and carry out simple instructions. The claimant can interact occasionally with supervisors, coworkers, and the public. He can never work at a production rate pace, such as on an assembly line. He is able to tolerate occasional changes in the routine work setting.

PageID.46. The ALJ also found that plaintiff had no past relevant work. PageID.52.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.52-53. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy including garment sorter (55,000 jobs), folder (52,000 jobs), and small products assembler (61,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from February 2, 1982 (his alleged onset date) through April 25, 2017 (the date of the decision). PageID.53-54.

## IV. DISCUSSION

Plaintiff set forth two errors on appeal:

### A. The ALJ committed reversible error by failing to find that plaintiff met Medical Listing 12.05 and thus was entitled to benefits.

The issue before the Court is whether plaintiff met the requirements of Listing 12.05, specifically Listing 12.05B. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular

5

impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d).  A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987).  *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The ALJ set forth the elements of Listing 12.05B in pertinent part as follows:

. . . . Paragraph B requires the following:

1.      Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.      Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00El); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3.     The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

PageID.46.

After reviewing the evidence, the ALJ concluded that:

In this case, these requirements are not met because the B criteria are not met. As discussed above, the claimant has only moderate limitations in these areas of functioning.

PageID.46.

As an initial matter, the ALJ did not specifically address plaintiff's IQ when discussing the Listings.   She apparently accepted the evidence that plaintiff met the IQ requirements [12.05B1], but found that plaintiff was not disabled because he did not meet the functional requirements [12.05B2], *i.e.*, plaintiff did not have an extreme limitation in one area of mental functioning, or marked limitations in two areas of mental functioning.  PageID.46.

The ALJ addressed these limitations as follows:

**In understanding, remembering, or applying information, the claimant has moderate limitations.** He alleges having problems with understanding and following instructions. He denied having problems with memory (7E/6). Two examiners diagnosed the claimant with intellectual disability after finding that he scored within the extremely low range in intelligence testing (10F/4-5; 22F/7, 11). However, his functioning shows that he is able to function at a higher level than testing alone suggests. For example, he has two children and does most of the driving for the family (22F/6). The claimant is able to operate a chainsaw, shovel snow, cook, clean, and perform his own self-care (2F/5, 108, 123; 9F/3). The claimant also reported engaging in activities such as driving, paying bills, counting change, handling a savings account, using a checkbook or money order, and supervising his children (Testimony; 7E/4-5; 22F/6). Therefore, his difficulty in this area is neither marked nor extreme.

**In interacting with others, the claimant has moderate limitations.** He alleges having high levels of anxiety that prevent him from leaving home and he alleged that he did not socialize (7E/5-6). However, in February 2015, the claimant reported that he talked occasionally with several close friends. He stated that he was close with his family and occasionally attended religious services (10F/3). The claimant was able to attend medical appointments as needed. Providers did not

usually observe that the claimant appeared anxious. Therefore, his difficulty in this area is no more than moderate.

**With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations.** He alleged that he has difficulty completing tasks, concentrating, and paying attention (7E/6). However, his admitted ability to handle money, supervise his children, and drive show that his ability in this area is neither marked nor extreme (Testimony; 7E/4).

**As for adapting or managing oneself, the claimant has experienced moderate limitations.** The claimant testified that his girlfriend and family members perform most household tasks such as cleaning and cooking. However, elsewhere in the record, he admitted that he was capable of cooking, cleaning, and self-care (2F/5; 9F/3). As discussed below, the claimant's anxiety and stress is not as limiting as alleged. Therefore, his difficulty in this area is no more than moderate.

PageID.44-45 (emphasis added).

The ALJ addressed plaintiff's IQ in that portion of the decision which discussed plaintiff's residual functional capacity (RFC):

Most recently, in January 2017, the claimant underwent a psychological consultation with Michael Hayes, Ph.D. He reported that he had difficulty reading and completing forms. He stated that he could not handle stress, experienced panic attacks, and was afraid of germs (22F/6). Dr. Hayes observed that the claimant appeared disheveled, but maintained appropriate hygiene. He remained attentive and demonstrated appropriate concentration. His speech and language functions were intact; however, his vocabulary and syntax was "consistent with individuals of impoverished backgrounds" (22F/7). Mentation and cognitive functions appeared to be somewhat slowed (22F/7). He administered testing that measured the claimant's full scale IQ at just 63 (22F/7). However, Dr. Hayes noted that higher subtest scores suggested a potential for performance within the borderline range (22F/10). He diagnosed the claimant with moderate intellectual disability and generalized anxiety disorder (22F/1 l). . . .

In February 2015, Dr. Brady opined that the claimant's ability to relate and interact with others, including coworkers and supervisors, was fair. His ability to understand, recall, and complete tasks and expectations was "a bit impaired." However, he could perform simple tasks with no "major limitations." The claimant's ability to maintain concentration was fair. His ability to withstand the normal stressors associated with a workplace setting was somewhat impaired (10F/5). Dr. Brady's report is internally inconsistent. He deemed the claimant's full scale IQ of 59 as valid. However, this is inconsistent with his opinion showing that the claimant can sustain simple tasks. A valid IQ score of 59 is also inconsistent with the claimant's ability to perform well on memory tasks, which Dr. Brady had

also observed and noted in his report. Moreover, Dr. Brady used very vague language to describe the claimant's deficits, such as "a bit impaired," "no major limitations," and "somewhat impaired." The undersigned accords this opinion partial weight because it shows that Dr. Brady did not actually find that the claimant was operating within the extremely low range of intellectual functioning. However, because his opinion is also very vague, the undersigned does not accord it more weight.

PageID.49-51.

Plaintiff's Brief does not develop any particular argument in any particular detail. Plaintiff spends considerable effort addressing the IQ scores. PageID.1097-1098. This discussion is not relevant to the error raised, because the ALJ accepted the fact that plaintiff met the IQ scores for purposes of Listing 12.05B. Plaintiff devotes one large, multi-page paragraph (PageID.1098-1100) expressing disagreement with a different aspects of the ALJ's decision (*e.g.*, the ALJ's conclusions regarding the validity of his IQ scores, the fact that the ALJ "is not a trained psychologist," and the testimony of plaintiff's mother regarding plaintiff's abilities). However, plaintiff does not address how any of this evidence establishes that the ALJ erred in finding that plaintiff did not have one extreme limitation or two marked limitations in mental functioning under Listing 12.05B2. Rather, the brief raises a hodgepodge of arguments which essentially asks this Court to perform a *de novo* review of Listing 12.05B, a task which is outside of the scope of this review. *See Brainard*, 889 F.2d at 681.

In his reply brief, plaintiff expresses displeasure over the current regulations, suggesting that plaintiff would have been disabled under "the old version of Medical Listing 12.05" because "Plaintiff had demonstrated a valid IQ score of 60 or less, proof that his mental impairment began before age 22, and proof of other severe physical impairments." Reply Brief (ECF No. 15, PageID.1125). However, plaintiff has developed no argument to suggest that the ALJ applied the wrong Listing in this case.

Based on a review the administrative record and for the reasons stated above, the Court concludes that the ALJ's finding that plaintiff failed to meet the requirements of Listing 12.05B is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.

**B.     The ALJ committed reversible error by using improper boilerplate language to justify her Decision.**

Next, plaintiff contends that the ALJ committed reversible error by attempting to justify her decision "with meaningless boilerplate." PageID.1101. Plaintiff cites *Bjornson v. Astrue*, 671 F. 3d 640 (7th Cir. 2012), a decision which questions the utility of the Social Security Administration's templates. PageID.1101. Plaintiff, however, has done little more than cite this case. This Court has previously rejected a cursory claim that the Seventh Circuit's ruling in *Bjornson* requires that an ALJ's decision should be reversed for using the agency's defective "boilerplate" language or a defective "template". *See, e.g., Childs v. Commissioner of Social Security*, 2019 WL 1397080 at *5 (W.D. Mich. March 28, 2019). Plaintiff has not presented a meaningful argument in support of this error. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is deemed waived.

**V.     Conclusion**

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  September 27, 2019                                    /s/ Ray Kent
                                                             United States Magistrate Judge